UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OLINDA F. LAWRENCE | CIVIL ACTION |
| VERSUS | NO. 18-8105 |
| UNITED PARCEL SERVICE | SECTION "A" (4) |

### ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 41)** filed by the Defendant United Parcel Service ("UPS"). The Plaintiff Olinda Lawrence opposes the motion, (Rec. Doc 47), and UPS replied. (Rec. Doc 53). The motion, set for submission on June 12, 2020,[1] is before the Court on the briefs without oral argument.

### I.   BACKGROUND

Lawrence has been employed with UPS since June 2, 2004, (Rec. Doc. 41-3, p. 6, Lawrence's Deposition), and she still remains employed by them today as a part-time air driver at the UPS center in Harvey, Louisiana. (Rec. Doc. 41-2, p. 1-2, UPS's Memorandum in Support). Lawrence is also a member of Local 270 of the International Brotherhood of Teamsters, and her employment relationship with UPS is governed by the National Master United Parcel Service Agreement and the Southern Region Supplemental Agreement (the "CBA"). *Id*. at 2.

Lawrence's Complaint stems from a series of conflicts between Lawrence and one of her coworkers, Jeffrey Smallwood (Rec. Doc. 1, p. 7, Lawrence's Complaint). More specifically, Lawrence claims that Smallwood attacked her on two separate occasions, once in June 2015 and then again in May 2016. *Id*. In the June 2015 incident, Lawrence claims

---

[1] The Court notes that it requested supplemental briefings from the parties regarding Lawrence's wrongful termination claim (Rec. Doc. 61), which it received from UPS on July 1, 2020 (Rec. Doc. 63) and from Lawrence on July 14, 2020. (Rec. Doc. 64).

Page **1** of **14**

that Smallwood intentionally rolled over her foot with a cart. (Rec. Doc. 41-3, p. 59, Lawrence's Deposition).

The second incident, which occurred on May 21, 2016, started when Smallwood asked two male drivers to deliver a package for him. *Id*. at 62. After they refused, Smallwood then asked Lawrence to deliver the package, but Lawrence said "no." *Id*. Smallwood, however, placed the package onto her delivery truck, prompting Lawrence to move the package back on to Smallwood's truck. *Id*. As Smallwood was bringing the package back to Lawrence's truck, Lawrence put her hands up and blocked Smallwood. *Id*. Lawrence claims that Smallwood then grabbed her wrist and told her to "get out of his F'ing face or he [was] going to F [her] up." *Id*. Lawrence responded by telling Smallwood to "get his F'ing hands off [her]." *Id*. at 63. Their altercation ended when the UPS airport supervisor interceded and told Smallwood to deliver the package and instructed Lawrence to get on the road and deliver her packages. *Id*. at 68. After the incident, Lawrence called the UPS Help Line to file a complaint, and she also notified her direct boss and the UPS Business Manager, Silvester Smith, about her confrontation with Smallwood. *Id*. at 67.

After conducting an internal investigation, UPS concluded that both Lawrence and Smallwood behaved in an unprofessional manner and issued written warnings to both. (*Id*. at 74). Further, UPS Business Manager Smith met with Lawrence on June 1, 2016 and warned her that any further instances would result in disciplinary action, up to and including discharge. *Id*. After UPS's investigation ended, Lawrence sought and obtained a restraining order against Smallwood in state court which prohibited him from going within fifty feet of Lawrence. *Id*. at 75. However, this order did not apply to Lawrence and Smallwood's mutual work locations and allowed them to continue working together at the UPS airport terminal. (Rec. Doc. 41-3, p. 129-30, Restraining Order).

Lawrence was unaware of that exception. Thus, on June 25, 2016, when Smallwood walked within fifty feet of her while they were working at the airport, Lawrence began yelling at Smallwood telling him that he could not come within fifty feet of her. (Rec. Doc. 41-3, p. 82-89, Lawrence's Deposition). Lawrence's reaction to Smallwood's presence was so disruptive that airport security and the police were called to the scene. *Id*. at 90. This type of altercation happened a second time on June 28, 2016, and airport security again had to come and subdue the disturbance. *Id*. at 92.

As a result of these incidents, airport security warned UPS security representative Shaundrell McGhee that they would not tolerate any additional incidents and that Lawrence could no longer return to the premises if UPS wanted to maintain its airport privileges. (Rec. Doc. 41-13, p. 1, McGhee's Declaration). Accordingly, UPS Business Manager Smith sent Lawrence a message to report to him before clocking out for the day. (Rec. Doc. 41-5, p. 3, Smith's Declaration). Lawrence, however, ignored Smith's instruction and instead clocked out and left. *Id*. Smith assumed that Lawrence was abandoning her job in light of all that had happened, and he issued her a notice of discharge for ignoring his instruction. *Id*. at 3-4. He also issued an intent to discharge based on her recent unprofessional behavior and deactivated Lawrence's airport badge. *Id*. at 4.

Lawrence remained unemployed until the union was able to successfully negotiate her discipline down to only a "time-lost" suspension on June 13, 2016. (Rec. Doc. 41-2, p. 6, UPS's Memorandum in Support). Before Lawrence returned to work, the airport's security manager informed UPS that Lawrence had attempted to reactivate her ID badge. (Rec. Doc. 41-13, p. 1, McGhee's Declaration). UPS and airport protocol prohibit employees from seeking to reactivate their ID badges because badges may only be activated with authorization from UPS authorized signers. *Id*.

As a result, "on July 19, 2016, [UPS supervisor] Gregg Frederick and [Shaundrell McGhee] met with Lawrence to discuss the whereabouts of her badge and what we believed to be inconsistent statements by Lawrence regarding her badge." *Id*. at 2. "[This is because] Lawrence previously told Frederick that she [had] turned [in] the badge [to] the airport, which [the airport security manager] said was not true." *Id*. "Tyrone Dudley, Lawrence's supervisor, reported to us that Lawrence told him she threw the badge away." *Id*. However, "Lawrence told [MeGhee] that she left the badge at home." *Id*. "When [Frederick and McGhee] met with Lawrence, she admitted that she went to the aviation board at the airport, but she denied attempting to [reactivate] the badge." *Id*. "Lawrence said she tried to turn in the badge to the airport's board, but they would not accept it." *Id*. Because McGhee believed that Lawrence was being untruthful, he decided to discharge Lawrence for dishonesty. *Id*. However, Lawrence filed a grievance contesting the discharge, and her discharge was reduced to a "time-lost" suspension through the grievance process. (Rec. Doc. 41-3, p. 104, Lawrence's Deposition).

Subsequently, Lawrence filed a Complaint against UPS on August 24, 2018. (Rec. Doc. 1, Lawrence's Complaint). She is proceeding *pro se* and her Complaint names five claims: (1) hostile work environment, (2) failure to promote, (3) disparate treatment, (4) retaliation, and (5) wrongful termination. *Id*. at 4. After conducting discovery, UPS filed a Motion for Summary Judgment. (Rec. Doc. 41).

The Court will now address the merits of UPS's Motion.

## II. STANDARD OF REVIEW

### A. *Pro Se* Litigant

Because Lawrence is proceeding *pro se*, the Court must construe her pleadings liberally. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir.1995). However, "[t]he right of self-

representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981).

### B. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record[.]). A fact is immaterial "if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

### III. DISCUSSION

### A. Timeliness of UPS's Motion for Summary Judgment

The Court set the deadline for dispositive motions in this case for June 10, 2020. (Rec. Doc. 39). Thus, the parties were required to file their dispositive motions by May 26, 2020. *Id*. However, Lawrence claims that UPS's Motion for Summary Judgment is untimely because she "received [the] Defendant's Dispositive Motion on [May 28, 2020.]" (Rec. Doc. 47, p. 1, Lawrence's Opposition). However, the Court notes that UPS timely filed its Motion for Summary Judgment with the Court on May 26, 2020. The Court finds it immaterial that UPS

mailed Lawrence a copy of its Motion for Summary the next day, on May 27, 2020. (Rec. Doc. 49-2, p. 1, UPS's Reply).

### B. Claims not in Lawrence's Complaint

In its Reply Memorandum, UPS notes that Lawrence raises the following "new arguments" in her Opposition to UPS's Motion for Summary Judgment: (1) that she was assigned to an "unsafe" work condition, (2) that a prior judge "refused Recusal" and is kin to someone involved in prior litigation, (3) that "the UPS settlement conference was 'ONLY to learn of [the] Plaintiff's demand,'" and (4) that she was "wrongfully banned from [the] flight line" by the airport. (Rec. Doc. 49-2, p. 2, UPS's Reply). Pursuant to Federal Rule of Civil Procedure 8, "notice pleading" requires the plaintiff to give a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Thus, any claims asserted by Lawrence that are not in her Complaint are not before the Court. Further, Lawrence recognized this in her Opposition when she said that, "[the] Plaintiff['s] Complaint were of (5) claims[.]" (Rec. Doc. 47, p. 2, Lawrence's Opposition). As noted above, Lawrence's five claims include: (1) hostile work environment, (2) failure to promote, (3) disparate treatment, (4) retaliation, and (5) wrongful termination. Accordingly, the Court will only address the merits of those five claims in the context of UPS's Motion for Summary Judgment.

### C. Lawrence's Claims Before February 25, 2015

In her Complaint, Lawrence explains that some of her claims date back to 2006. (Rec. Doc. 1, p. 11-13, Lawrence's Complaint). However, Lawrence signed an agreement with UPS which compromised "all known and unknown claims that could have been asserted" as of February 24, 2015, the day she signed it. (Rec. Doc. 41-3, p. 120-27, Settlement Agreement). Thus, any claims arising before February 25, 2015 are barred.

### D. Lawrence's Claims Before September 23, 2015

The Fifth Circuit "has long required plaintiffs to exhaust their administrative remedies before bringing suit under Title VII." *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006). In order to file suit under Title VII, a plaintiff must first file a charge with the EEOC within 300 days of the alleged discriminatory act. *Id*. (citing 42 U.S.C. § 2000e, et seq.). Once the EEOC issues a right-to-sue letter to the party who has filed the EEOC charge, that party has 90 days to file a Title VII action in federal court. *Id*. (citing 42 U.S.C. § 2000e, et seq.). However, literal compliance with this rule is not always required as "[i]t would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC." *Id*. (quoting *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968)).

Here, Lawrence filed her EEOC complaint on July 19, 2016. (Rec. Doc. 41-10, p. 9, Lawrence's EEOC Form). Thus, any claims occurring more than 300 days before this date are untimely. For instance, Lawrence claims that on June 2015 Smallwood intentionally rolled over her foot with a cart and that UPS did not properly discipline Smallwood in response. However, those such claims are untimely.

Further, Title VII claims for retaliation must be brought within 90 days after receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Thus, Lawrence's claims which were not pled in her Complaint, but which may have been asserted in her charge of discrimination, are untimely because her 90-day window within which to file suit on any such claims has passed.

### E. Lawrence's Five Claims

#### 1. Lawrence's Hostile Work Environment Claim

In order to establish a hostile work environment claim in violation of Title VII, a plaintiff must prove that "(1) she is a member of a protected group; (2) she was subjected to

unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir.2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.2002)). "For harassment on the basis of a protected characteristic to affect a term, condition, or privilege of employment, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Ramsey*, 286 F.3d at 268).

As detailed above, there were three altercations during 2016 between Lawrence and Smallwood (the May 21, June 25, and June 28 events). In her Complaint, Lawrence claims that Smallwood discriminated against her based on her gender during these three events. (Rec. Doc. 41-3, p. 65, Lawrence's Deposition). More specifically, Lawrence claims that Smallwood targeted her during the May 21 incident by putting "his hands on her," and he did not do so to the two other male employees who refused to take the package. *Id*. As for the incidents on June 25 and June 28, Lawrence claims that she was subjected to a hostile work environment when Smallwood allegedly violated the protective order by walking within fifty feet of her.

Here, the Court finds that Lawrence failed to make a hostile work environment claim. More specifically, Lawrence failed to present any evidence that the May 21, 2016 incident had anything to do with Lawrence's gender. Instead, the Court finds that this dispute merely sprung from a disagreement over who would deliver the package.[2] Further, as for the June 25 and June 28 incidents, Smallwood did not subject Lawrence to a hostile work environment

---

[2] The Court notes that Lawrence even testified that the dispute was solely about the delivery of the package. (Rec. Doc. 41-3, p. 65, Lawrence's Deposition).

by violating the protective order because of the order's carve-out for their mutual work locations. Thus, the Court dismisses Lawrence's hostile work environment claim.

### 2. Lawrence's Failure to Promote Claim

Lawrence claims that she was passed over for multiple, unspecified promotions to the full-time driver position and that UPS managers and supervisors hired male applicants and female lesbian applicants instead of her. (Rec. Doc. 41-3, p. 55, Lawrence's Deposition). As UPS noted in its Motion for Summary Judgment, "[u]nder the CBA, union employees may sign a bid sheet in order to place their names in consideration for a desired position, if one should become available." (Rec. Doc. 41-2, p. 12, UPS's Memorandum in Support); (Rec. Doc. 41-9, p. 2, Wilfred Edwards' Declaration). "Bid sheets are posted for union employees to sign every quarter, irrespective of whether a position is available at the time of posting." *Id*. "The mere signing of a bid sheet does not entitle an employee to the position. (Rec. Doc. 41-2, p. 12-13, UPS's Memorandum in Support); (Rec. Doc. 41-9, p. 2, Wilfred Edwards' Declaration). Rather, the employee must be qualified for the position and have the most seniority of those applying at the time the position is filled. (Rec. Doc. 41-2, p. 13, UPS's Memorandum in Support); (Rec. Doc. 41-9, p. 2, Wilfred Edwards' Declaration). The employees with the greatest seniority have a preference for a position when it comes available. *Id*.

Lawrence testified that, to qualify for a full-time driver position, applicants must pass a written test and a driving test. (Rec. Doc. 41-3, p. 57, Lawrence's Deposition). However, Lawrence stated that she has never passed the driving portion of the test. *Id*. at 58. Further, the only evidence Lawrence submitted in support of her claim were bid sheets, (Rec. Doc. 41-3, p. 160-61, Bid Sheets), but bid sheets only show who signed up to be considered for the positions, not whether a position was available at the time. (Rec. Doc. 41-9, p.2, Wilfred Edward's Declaration). In addition, several of the bid sheets show that Lawrence was not the

most senior employee who signed it. *Id*. Therefore, she was unlikely to receive the position even if she was qualified for it. Accordingly, the Court dismisses Lawrence's failure to promote claim.

### 3. Lawrence's Disparate Treatment Claim

Title VII makes it unlawful for a covered employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Liability on a claim that an employer intentionally discharged an employee because of race or national origin—i.e., a "disparate treatment" claim—"depends on whether the protected trait actually motivated the employer's decision." *Young v. United Parcel Service*, Inc., 575 U.S. 206 (2015) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)). "[A] plaintiff can prove disparate treatment either (1) by direct evidence that a workplace . . . decision relied expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*." *Id*. The *McDonnell Douglas* framework in turn requires a plaintiff to establish, at the threshold, a prima facie case of discrimination by showing that "(1) [she] is a member of a protected class, (2) [she] was qualified for the position at issue, (3) [she] was the subject of an adverse employment action, and (4) [she] was treated less favorably because of [her] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir.2009). If the plaintiff succeeds in establishing a prima facie case of discrimination, "the burden then shifts to the employer to produce evidence that its actions were justified by a legitimate, nondiscriminatory reason." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002).

Here, Lawrence claims that she was subjected to "different terms and conditions of employment" because she was disciplined more harshly than other employees. (Rec. Doc. 1, p. 4, Lawrence's Complaint). To support her claim, Lawrence offered her own deposition testimony and a declaration from Milton Carter, a union shop steward. (Rec. Doc. 47, p. 5, Lawrence's Memorandum in Support). In his statement, Carter specifically stated that he "confirms [that] there were other employees who were accused of same/similar offenses as [Lawrence's] 'alleged' offenses, and were administered differently." (Rec. Doc. 41-4, p. 5, Milton Carter's Declaration). Further, Carter said that he has "witnessed the rumor spread on [Lawrence] and a retired employee, in the past." *Id*. However, in his deposition, Carter also testified that he did not have personal knowledge of the discipline that Lawrence received. (Rec. Doc. 55-1, p. 2, Milton Carter's Deposition). Instead, he said that, "[t]he only knowledge [he did] have [was] based on what [Lawrence] would tell [him] and the information [he] would gather from other union stewards as to what transpired." *Id*. Thus, because he does not have firsthand knowledge of Lawrence's disciplinary treatment, he cannot adequately compare Lawrence's circumstances to other employees' circumstances.

Further, Lawrence testified that her co-worker Clarence Higel "severely wrecked his assigned package car at the local airport" but was not disciplined. (Rec. Doc. 41-3, p. 79-80, Lawrence's Deposition). She also claims that another co-worker, Colby Crepell, received paid time off while her request for leave was denied. *Id*. at 14. However, for both of these incidents, Lawrence failed to present any evidence of Higel's disciplinary history or the terms of Crepell's compensation. Further, Lawrence admitted that she did not have personal knowledge of either Higel's discipline or Crepell's compensation. Instead, Lawrence's testimony merely illustrates a subjective belief of discrimination. The Fifth Circuit has consistently held that a plaintiff's "subjective belief" of discrimination, alone, is insufficient to establish pretext. *See Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995); *Nichols v. Lewis Grocer*,

138 F.3d 563, 570-71 (5th Cir. 1998) ("A subjective belief of discrimination, however genuine, cannot be the basis of judicial relief."). Thus, because Lawrence has failed to present sufficient evidence to establish a prima facie case, the Court dismisses her disparate treatment claim.

### 4. Lawrence's Retaliation Claim

In order to state a retaliation claim, a plaintiff must allege "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). Further, the Fifth Circuit defines the term "protected activity" under Title VII to mean only complaints to an employer which specifically report harassment based upon race, sex, or age. *Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed.Appx. 913, 916 (5th Cir. 2006) (affirming summary judgment on a retaliation claim where the employer was not on notice because the plaintiff's complaints did not mention unfair treatment due to race or sex); *see also Tratree v. BP North American Pipelines, Inc.*, 277 Fed.Appx. 390, 396 (5th Cir. 2008).

Here, Lawrence formally complained on two separate occasions.[3] First, after the May 21, 2016 incident, Lawrence complained to her manager, Sylvester Smith, and the UPS Help Line that Smallwood attacked her. (Rec. Doc. 41-3, p. 71, Lawrence's Deposition); (Rec. Doc. 41-3, p. 3, Wilfred Edwards' Declaration). Second, after the June 28, 2016 incident, Lawrence called the UPS Help Line and complained that Smallwood violated the protective order by coming within fifty feet of her, that Smallwood and Smith were friends, and that she was being

---

[3] In her deposition, Lawrence claims that every action taken by her supervisors and managers since she was hired in 2006 was retaliatory. However, the Court notes that, given the broad nature of this claim, Lawrence cannot prove a causal connection between every action taken against her and a form of protected activity she never identified. Thus, any claims for those unspecified retaliatory actions against her are dismissed.

terminated by Smith for job abandonment. (Rec. Doc. 41-3, p. 70, Lawrence's Deposition). Neither of Lawrence's two complaints were based on her race, sex, or age. (Rec. Doc. 41-3, p. 70-71, Lawrence's Deposition); (Rec. Doc. 41-3, p. 3, Wilfred Edwards' Declaration); (Rec. Doc. 41-5, p. 4, Sylvester Smith's Declaration); Accordingly, because Lawrence's complaints do not constitute "protected activity" under Title VII, the Court dismisses Lawrence's Retaliation claim.

### 5. Lawrence's Wrongful Termination Claim

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(e)(1). In order to make out a prima facie case of wrongful termination under Title VII, 42 U.S.C. § 2000e, *et seq*., courts agree that the claimant must show that she was dismissed or that she suffered some kind of adverse employment consequence as a result of the employer's actions, on the basis of race. *See Pratt v. City of Houston*, 247 F.3d 601, 606 (5th Cir. 2001).

Lawrence's Complaint alleges that she "was wrongfully terminated twice for the same alleged offense; and on another occasion, while on Short Term Disability – (on job injury)." (Rec. Doc. 1, p. 7, Lawrence's Complaint). Further, she claims that she was "wrongfully terminated, in [an] attempt to have [Smallwood's] Restraining Order dismissed, and to 'cover up' workplace violence." *Id*. at 18.

However, the Court disagrees with Lawrence's contentions. As to her supposed terminations, the Court notes that Lawrence's employment was only suspended on both occasions for supposed dishonesty and disciplinary reasons. Lawrence never showed how these two suspensions were based on her race. Further, Lawrence cannot show that she suffered any meaningful adverse employment consequences because she resumed working

for the Defendant after each suspension and after her short term disability leave. She even still works for the Defendant today. Thus, the Court concludes that Lawrence's wrongful termination claim lacks merit.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 41)** filed by the Defendant United Parcel Service is **GRANTED**. The Plaintiff Olinda Lawrence's Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 48)** filed by the Plaintiff Olinda Lawrence is **DENIED AS MOOT**.

August 4, 2020

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE